1     IN THE UNITED STATES DISTRICT COURT
      MIDDLE DISTRICT OF TENNESSEE
2       NASHVILLE DIVISION

3  UNITED STATES OF AMERICA,  )
             )
4       Plaintiff,  )
             ) Case No.
5     v.       ) 3:25-cr-00115-1
             )
6  KILMAR ARMANDO ABREGO   ) DISTRICT JUDGE CRENSHAW
  GARCIA,         )
7            )
       Defendant.  )
8 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

9       BEFORE THE HONORABLE
10
   WAVERLY D. CRENSHAW, JR., DISTRICT JUDGE
11
      TRANSCRIPT OF PROCEEDINGS
12
       October 31, 2025
13 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

14

15 APPEARANCES:

16    For the Plaintiff: Mr. Robert E. McGuire
           U.S. Attorney's Office
17          719 Church Street, Suite 3300
           Nashville, Tennnessee 37203
18

19    For the Defendant: Rascoe S. Dean
           Sherrard Roe Voigt & Harbison, PLC
20          1600 West End Avenue
           Suite 1750
21          Nashville, TN 37203

22

23 PREPARED BY:
       LISE S. MATTHEWS, RMR, CRR, CRC
24       Official Court Reporter
      719 Church Street, Suite 2300
25       Nashville, TN 37203
      lise_matthews@tnmd.uscourts.gov

1          The above-styled cause came on to be heard on

2    October 31, 2025, before the Honorable Waverly D.

3    Crenshaw, Jr., District Judge, when the following proceedings

4    were had, to-wit:

5          THE COURT:  Be seated.  All right.

6          So let me thank the lawyers in Case Number 25-115

7    for the short notice to be here, but I thought it would be

8    helpful as we plan for next week.

9          I think given the posture of the case, now that

10   the government, for good reason, wants additional time to

11   search for documents, and the defense needs time to review

12   that, that we need to reschedule the hearing next week, but I

13   would like to put in place some scheduling that I guess the

14   government's had enough time to look for appropriate

15   documents and then go through the same process.  Let those be

16   filed in camera, give the Court a chance to look at those,

17   make a ruling on what, if any, of those need to be produced,

18   and then go from there.

19         So I guess I would like to get an anticipated or

20   planned time for the hearing.  I've got a couple dates here,

21   but it's a government shutdown.  You've got few people and

22   staffing.  I note that you've got some help -- some

23   additional lawyers on the government side to work, but

24   they're not necessarily -- I don't know where they are and

25   where they're stationed.

1          So I've got some ideas on how long I think it
2   should take the government to get -- to do a due diligence
3   for documents, but I'm going to not suggest my dates until --
4   and give the government -- Mr. McGuire, what do you say is a
5   reasonable time for you to check with people to make
6   sure what documents exist can be produced to you?
7          MR. MCGUIRE:  Yes, sir.  You know, Your Honor, we
8   obviously are trying to comply at this stage with the Court's
9   order, and I know that people are looking for responsive
10  documents.
11         THE COURT:  Um-hmm.
12         MR. MCGUIRE:  I don't know -- I don't have an
13  estimate that I can give the Court in terms of when they're
14  going to conclude that and their review process.  I know, for
15  example, that there are custodians of these that are not at
16  work or have left the government and have not been replaced.
17  So we're just trying to do the best we can in terms of some
18  of those -- some of those issues.  I guess what I would say
19  is if the Court has a timeframe in mind, I'm happy to hear
20  it, and then I can -- you know, we'll -- we'll do the best we
21  can.  But I can't -- I'm not in a position to tell the Court,
22  Hey, we're going to have responsive documents by date X at
23  this time.
24         THE COURT:  So -- and I can do that.  I can give
25  you my -- the dates that I'm looking at, but they're less

1  informed than you are.

2          MR. MCGUIRE:  I'm not sure that's true, but okay.

3          THE COURT:  Because I have no idea what people --

4          MR. MCGUIRE:  Right.

5          THE COURT:  -- need to be looked at.  And I've got

6  some fluctuation in the time.

7          So here's my posture.  We've got a trial date in

8  January.  They've raised some issues.  I've explained why I

9  think at this point -- not that the motion would be granted

10 or not granted -- but from my reading of the Sixth Circuit

11 cases, they get discovery.  I agree that -- and having looked

12 at some of the in camera, yeah, there are some documents that

13 fall within some of the privileges that aren't necessary for

14 defense to. . .  But at least my first couple run-throughs,

15 yeah, there's a handful of documents that the defense needs

16 to know about in order to adequately present their position

17 at an evidentiary hearing.  I want to keep the trial date.

18 So with that in mind, I'm wondering -- today is October the

19 31st.  What does the government think about making November

20 the 7th -- a week from today?

21         MR. MCGUIRE:  Well, I can tell the Court I'm

22 actually out of town November the 7th.

23         I'm sorry.  Let me make sure I understand.  Is the

24 Court talking about sort of a deadline for response or the

25 hearing or --

1     THE COURT:  Oh, no.  I'm talking about a deadline
2  for you to determine if there are additional responsive
3  documents.
4     MR. MCGUIRE:  I see.
5     THE COURT:  File those.  I'm going to ask you to
6  continue in the future our Bates stamp number.
7     MR. MCGUIRE:  Yes, sir.
8     THE COURT:  And file those under seal.
9     MR. MCGUIRE:  Yes, sir.
10     THE COURT:  And just so the government knows, and
11  the defense knows, because of some intrusions in the judicial
12  system -- quite frankly, these documents -- under seal
13  documents now are double locked up.  So there's no way that
14  lawyers can get to it unless I allow you.  So when the Court
15  puts something under seal now you actually need an order from
16  me.  And the only way you're going to get it is I have to
17  tell the Clerk, give -- give this lawyer -- which I just
18  did -- Document Number 80.  And they physically take it out
19  of seal and give that to that person.
20     So any additional documents, let's go ahead and
21  file those, by the government, under seal.  And that's why
22  I'm going to go ahead and -- or ask the government to file
23  documents Bates stamp 1 through 190 --
24     MR. MCGUIRE:  I'm sorry.  Do that one more --
25  I'm -- 1 through --

1    THE COURT:  So either the Court can put on the

2  docket documents that have been Bates stamped number 1

3  through 190 -- those need to be placed on the docket in this

4  case under seal.

5    MR. MCGUIRE:  Okay.

6    THE COURT:  I can do that, or you can do that.

7    MR. MCGUIRE:  I will, Your Honor, have to sort of

8  consult with the rest of the folks in the department about

9  our privilege position.  I understand they're still under

10  seal.  But that -- I don't know if that is an indicator that

11  the Court is in -- sort of intending to potentially --

12    THE COURT:  I'm creating an appellate record.

13    MR. MCGUIRE:  Okay.  Okay.

14    THE COURT:  I'll go ahead and put them under seal;

15  I'll direct the Clerk to put those documents that's been

16  Bates stamped 1 to 190.  And then any future documents, the

17  government can start with 191.

18    MR. MCGUIRE:  Okay.  And then --

19    THE COURT:  Now, as a cleanup, a housekeeping

20  measure, I do need the government to give me an unredacted

21  version of Documents 111, 112 and 113.  So if you could file

22  that under seal, or you can deliver it to chambers.  But the

23  version I have is all redacted.  There's nothing there.

24    MR. MCGUIRE:  Yes, sir.

25    THE COURT:  Okay.  And if that could be done today

1    that would be great.

2              MR. MCGUIRE:  Yes, sir.

3              THE COURT:  So now let's go back to November 7th.

4    All I would be looking for is for the government to say,

5    well, we've had further time, as you put it in your letter,

6    to gather documents under the circumstances we have here, and

7    you would make an additional, and hopefully complete,

8    version.  Because I don't want to rule on what documents --

9    what set of documents should be provided to the defense until

10   I have everything.

11             MR. MCGUIRE:  It could -- could I have until

12   November 14th, Your Honor?

13             THE COURT:  Yes.  That was going to be my next

14   date.

15             MR. MCGUIRE:  Thank you.

16             THE COURT:  So there you go.

17             MR. MCGUIRE:  Thank you.

18             THE COURT:  Thank you.  So that gives the

19   government two weeks to search for documents in the

20   categories that I think I set forth in Document Number 185.

21             So with that being the date, that will give the

22   Court a chance to review all the documents in camera.  And

23   then I intend to rule what documents, subset of those, I

24   think should be delivered to the defense.  I'll state my

25   reasons why.  And simultaneously I think I'll issue one

1   memoranda opinion both on the documents to be produced as
2   well as the motions to quash.
3             MR. MCGUIRE:  And then, Your Honor, depending on
4   how the Court rules, we may ask the Court to stay that
5   ruling --
6             THE COURT:  Sure.
7             MR. MCGUIRE:  -- for review, but we'll obviously
8   see how -- we'll read the Court's order.
9             THE COURT:  Good.  And just as a placeholder,
10  because -- let's -- let's tentatively set our evidentiary
11  hearing -- obviously if there's an appeal that will delay
12  everything, but let's go ahead and set the evidentiary
13  hearing on the motion to dismiss for vindictiveness for 9:00
14  on December the 8th.
15            MR. MCGUIRE:  12/8.
16            THE COURT:  Monday.
17            MR. MCGUIRE:  Yes, sir.
18            THE COURT:  And then I'll ask you all to provide
19  to me by December the 1st your revised witness lists and
20  exhibit lists.  Also, while you're writing this down, on
21  December 1, your witness and exhibit lists for the
22  evidentiary hearing, go ahead and put there December 1st is
23  also your deadline -- I'm sorry.  December 1st is the Court
24  deadline, internal to the Court, I need a final jury
25  questionnaire ready to go.

1          MR. MCGUIRE:  Yes, sir.

2          THE COURT:  And for that, I'm going to give you

3    all a draft, and you need to get to me your suggested

4    recommended edits no later than noon on November the 24th so

5    I can finalize it with any recommendation y'all have.  It --

6    that's a Monday.

7          MR. MCGUIRE:  Okay.

8          THE COURT:  And that gives me time to look at it

9    and then get it to the jury administrator so she can get

10   ready to bring in the jury.  So that Monday, November the

11   24th, final recommended edits to the jury questionnaire.

12         Okay.  So, we've got November the 14th for the

13   government to supplement its production.  The Court's going

14   to put the documents it has under seal on the record.  And

15   then the redacted -- you'll provide me the redacted documents

16   111, 112 and 113 today.  If possible, if the government could

17   eliminate duplicate copies.  There are just quite a number.

18   But I understand that you might not be able to do that.  And

19   if possible -- and you kind of did this the last time.  You

20   gave me sort of two sets, one that we're getting ready to

21   talk about.  Give me a table of contents so I can follow what

22   you're providing.

23         MR. MCGUIRE:  Yes, sir.

24         THE COURT:  And, of course, those will be provided

25   under -- filed under seal.

1          So that takes me to the new -- VanWie.  Is that
2    how you pronounce it?
3          MR. MCGUIRE:  I believe so, yes, sir.
4          THE COURT:  And I was really hoping you all
5    could -- since these are documents you just found, the
6    government hasn't had an adequate time to review them.  I was
7    hoping you could review them.  My quick review suggests they
8    look like documents that would all go to the defense.  So I
9    have not focused on those.  I was hoping you could look at
10   them thoroughly, then meet with the defendants, say, Hey, we
11   found some additional documents they need.
12         MR. MCGUIRE:  So, before we leave the first
13   portion, Your Honor.  So I just want to make sure I
14   understand.  You're going to put Documents 1 through 190
15   under seal but that is not going to be available to the
16   defense?
17         THE COURT:  It's not available to anybody.  It's
18   not even available to you.
19         MR. MCGUIRE:  That's fine.
20         THE COURT:  Nobody can get to -- unless the Court
21   gives anyone permission.
22         MR. MCGUIRE:  I just wanted to make sure.
23         THE COURT:  But I want to make sure that the
24   record is clear.  And I have looked at those documents and
25   that needs to be on the record.

1          MR. MCGUIRE:  Okay.  I just wanted to make sure I

2    understood the Court.

3          As to the documents we received from Agent

4    VanWie -- there are texts and emails.  Your Honor, I think

5    when Agent VanWie testifies, they're -- we would provide them

6    as *Jencks*.  I had previously provided them or discussed with

7    Mr. Dean at our meet and confer that there would -- we would

8    make a *Jencks* production prior to the hearing.  I'm going

9    through that now.  I'm pretty close to having that decided.

10   I don't -- frankly, I don't think all of them would qualify

11   as *Jencks*.  I think there are many that would.  And we would

12   provide those to the -- to the defense prior to the hearing.

13   I don't think that any of them, from my review, Your Honor,

14   would necessarily be discoverable under Rule 16 or

15   potentially as *Brady* material, but they certainly would be

16   *Jencks* if he testified.

17         THE COURT:  Right.  And again as best as I

18   understand the law -- and here we're -- Rule 16 -- Rule 16

19   doesn't envision what we're doing here.

20         MR. MCGUIRE:  I agree.

21         THE COURT:  Nobody on the committee thought about

22   this.  So we're really looking more at 401, are any of these

23   documents going to be relevant to his testimony regarding

24   what he did when the -- when the -- when the criminal

25   investigation was revised.

 1          MR. MCGUIRE:  And I think that's what we would

 2   consider really to be *Jencks* material.  He's directing --

 3   there are correspondence where he's directing people to do

 4   things.

 5          THE COURT:  Okay.

 6          MR. MCGUIRE:  Or is passing information.

 7          THE COURT:  Yeah.

 8          MR. MCGUIRE:  I think a lot of those materials are

 9   forwarded emails.  I'm not sure that that is *Jencks* material.

10   I don't think that that's a statement that he's adopted.  So

11   we're trying to be thoughtful, especially in the context of

12   our privilege assertions, but also knowing if he testifies

13   his statements become *Jencks* material at that point.

14          THE COURT:  And if you all want to talk about

15   producing those pursuant to a protective order, send it to me

16   and I --

17          MR. MCGUIRE:  Yes, sir.  We had talked about that

18   and I think -- and Mr. Dean can comment on that.  We think

19   that the protective order the Court has already entered would

20   cover that.  If they change their mind we just said we would

21   approach you, but we think --

22          THE COURT:  Or if you just want to have some belts

23   and suspenders.

24          MR. MCGUIRE:  Yes, sir.  Yes, sir.

25          THE COURT:  So go -- so on that issue, what's a

1  reasonable -- I just want to have a deadline so I can know,

2  okay, y'all have met, conferred, resolved it or not.

3         MR. MCGUIRE:  We have met and conferred.  We met

4  and conferred yesterday about the VanWie stuff.

5         THE COURT:  Okay.

6         MR. MCGUIRE:  I don't know -- from our perspective

7  we think that there is not any 16 -- rule -- or material that

8  we think is discoverable either to the case or even

9  potentially to the motion that is not *Jencks*, which we would

10 provide prior to the hearing, which is now in December, I

11 guess.

12        THE COURT:  All right.  So I guess if you decide

13 they are something that are arguably *Jencks*, you would

14 provide that?

15        MR. MCGUIRE:  Yes, sir.

16        THE COURT:  Okay.

17        MR. MCGUIRE:  Yes, sir.  And we've already kind of

18 started to get that grouping together, and I've asked for

19 that material from Special Agent Saoud as well, because she

20 is one of our witnesses that we've noticed.  I'm still

21 working on that.  But the idea I had told Mr. Dean is I would

22 provide them before the hearing.

23        THE COURT:  So I think we Bates stamp those, as

24 well.

25        MR. MCGUIRE:  I haven't received any *Jencks*

1  material from Agent Saoud yet.

2          THE COURT:  No.  No.  I'm sorry.  The new VanWie

3  documents, those were Bates stamped, right?  Yeah.

4          MR. MCGUIRE:  They are part of what went to the

5  Court, yes, sir.

6          THE COURT:  Okay.  So I just want to wrap this up

7  and know that you all have taken care of the entire group of

8  VanWie, or do I need to look at some and say, Okay, I still

9  think under 401 this could be relevant at the hearing?

10          MR. MCGUIRE:  I guess what I would say is, Your

11  Honor, I think that's probably baked into the analysis the

12  Court's already doing.  I mean, if you decide that any of

13  these materials that have been provided in camera --

14          THE COURT:  Right.

15          MR. MCGUIRE:  -- I think it's all -- the same

16  universe is true.

17          THE COURT:  Right.  But I don't want to rule on

18  them if you've decided all of them have been done --

19          MR. MCGUIRE:  I see.  I see.

20          THE COURT:  -- or there are five you couldn't

21  agree on; I'll look at the five.  I just need to know what's

22  left on my plate.

23          MR. MCGUIRE:  I see.  I will -- we'll -- we'll do

24  that.

25          THE COURT:  So why don't we just say by the

November the 14th you'll let me know where you all are on the
VanWie stock.

        MR. MCGUIRE:  Yes, sir.

        THE COURT:  Do you remember the docket -- whatever
the Bates stamp numbers are.

        MR. MCGUIRE:  Yes, sir.

        THE COURT:  Okay.

        All right.  Now, next thing on my list is -- and
maybe we've answered it.  If you wanted to, we could proceed
with the motion to suppress on the November -- November 2022,
but it's only one witness, so I don't know. . .

        MR. DEAN:  Your Honor, if it's okay with the Court
and Mr. McGuire, may we do that in December, as well?

        MR. MCGUIRE:  Fine with me.

        THE COURT:  Done.  So that's set for December the
8th.  And I guess just to be prepared maybe we better say
December 8th and 9th.

        MR. MCGUIRE:  I agree.

        THE COURT:  Just in case we can't get it all done,
but I think we can clearly get it done in two days.

        MR. MCGUIRE:  I agree, Your Honor.

        THE COURT:  Okay.

        All right.  And the last thing I have I've already
talked about.  Before you leave, I'm going to give you a
draft of the -- of our working document.  Overlook the typos,

1   spacing, et cetera.  But just so you know, what you really

2   want to focus your time on, starting at question 30 we get

3   into questions about this case, and that's where I would

4   suggest you all look at.

5          MR. MCGUIRE:  We're pretty close on the jury

6   questionnaire.  I think we should be able to knock it out.

7          THE COURT:  I mean, Mr. Dean knows, and you know,

8   the way the Court has done this in the past, and I've made

9   some adjustments, but nothing dramatic.

10          MR. MCGUIRE:  I think we could -- may be the one

11  area we can agree on in this case.

12          THE COURT:  Hope springs eternal.

13          MR. MCGUIRE:  Always.

14          THE COURT:  All right.  What else -- while you're

15  at the podium, what else do we need to discuss as I make

16  sure -- have I covered everything?  I'm told I have.

17          MR. MCGUIRE:  I don't have anything additional,

18  Your Honor.  Mr. Dean might.

19          THE COURT:  Okay.

20          MR. DEAN:  Your Honor, I have two --

21          THE COURT:  Sure.

22          MR. DEAN:  -- matters.

23          Your Honor, this first matter I've discussed with

24  US Probation Officer Rock.  I've also discussed it with

25  Mr. McGuire.

```
 1            THE COURT:   US Probation Officer who?
 2            MR. DEAN:  Rock.
 3            THE COURT:  Tina Rock?
 4            MR. DEAN:  Yes.
 5            THE COURT:  Okay.
 6            MR. DEAN:  When Mr. Abrego was --
 7            THE COURT:  Here in the Middle District?
 8            MR. DEAN:  In the Middle District.
 9            THE COURT:  Okay.
10            MR. DEAN:  When Mr. Abrego was released, one of
11   his conditions of his release was that if he had a passport
12   he needed to turn it into the United States Probation office.
13   He was released.  He was subsequently taken back into custody
14   by DHS and ICE.  In the past week or so his wife has located
15   his passport.  And so I spoke to Ms. Rock about that, Officer
16   Rock.  And she said as the way the condition's currently
17   written, he needs to turn that in but she would not be
18   opposed to a motion for us to modify that condition to allow
19   his immigration attorney to hold it, and Mr. McGuire would
20   not either so long as Mr. Abrego remains in custody.  And so
21   I wanted to preview for the Court we may be making an
22   unopposed motion along those lines.
23            THE COURT:  Sure.  I suppose that if he's
24   involuntarily sent to another country he doesn't need a
25   passport anyway.
```

```
 1            MR. MCGUIRE:  I don't -- I don't know that, Your
 2   Honor, but I just -- I don't have an objection to his
 3   immigration lawyer having his passport as long as he's in
 4   custody.
 5            THE COURT:  All right.
 6            MR. DEAN:  Our last request for the Court relates
 7   to the government's search for documents.  We would just
 8   request -- and I've made this request to Mr. McGuire -- that
 9   as the government is searching it is documenting its search:
10   It is documenting exactly what it did or did not do in terms
11   of trying to collect these documents.  Because from
12   Mr. Abrego's perspective, the defense team's perspective, we
13   have no idea what, if anything, the Department of Justice is
14   doing, and the Department's not telling us what it's doing.
15            THE COURT:  So what's your request?
16            MR. DEAN:  That the government document its
17   efforts.
18            THE COURT:  Oh.  Have you and Mr. McGuire talked
19   about it, or what?
20            MR. DEAN:  We have, Your Honor.
21            THE COURT:  Okay.  And?
22            MR. DEAN:  I have not gotten any feedback about
23   what, if any, efforts the government is making.
24            THE COURT:  All right.  Mr. McGuire?
25            MR. MCGUIRE:  Your Honor, I think -- you know,
```

1  we're obviously trying to comply with the Court's order, and
2  it's -- you know, the Court's order was broad in terms of its
3  scope.  I think -- in terms of the Court asked for specific
4  kinds of documents but essentially made it almost government
5  wide.  And so that's why we're trying to find the -- what we
6  think are responsive documents where they exist.  But that
7  process I think probably varies by the people who are doing
8  it, and I may not have a window into that because of where I
9  sit in my office.  So it's difficult for me to sort of
10 communicate, you know, who's doing what and when because of
11 the responsiveness that we're trying to provide the Court.
12          THE COURT:  Well, I think -- if the defense point
13 is the government needs to be ready to explain to the Court,
14 at a minimum if the Court has questions, how did you go about
15 complying with the order, that should -- that would be well
16 to do that.
17          MR. MCGUIRE:  Yes, sir.
18          THE COURT:  Because the Court would expect that
19 the two agencies involved -- and it's really Department of
20 Justice and Homeland Security -- we know this case is going
21 on, know that for the reasons stated the Court has allowed
22 discovery, knows that I've identified certain categories of
23 discovery.  That, yes, attempts to capture the documents but
24 yet are specific and limited by time, a timeframe, so it's
25 not all encompassing, that, yeah, at some point the

government should be ready to at least explain to the Court

that at a minimum you've engaged in the conduct and the

search necessary to show a good faith due diligence to find

documents.  The Court's not naive enough to think there will

be no mistakes, but the Court does expect it went about doing

that in a business-like manner, in a good faith effort to

comply, knowing that the Court needs to see everything to

make a determination of what from that group, what subset of

documents, the defense reasonably needs to prepare for a

hearing.  To the extent it helps the defense or the

government, by ordering the documents, the Court has in no

way made a finding about the motion.  The Court's ordering

these documents to be produced in camera by the government

because based on my reading of Sixth Circuit law they're

entitled to discovery.  I think that means they're entitled

to focus, what I call narrow discovery, that under 401 gives

them information they need to be effective at a hearing.

Because at that hearing I'm going to make an independent

determination based on everything that's been presented and

applying Sixth Circuit law on whether or not the strong

request -- strong in the sense they're seeking dismissal of

the case -- that's -- that's a big chasm whether or not

that's well taken.  And that will create our record and then

you all can do whatever you want.  Does that help?

        MR. MCGUIRE:  Yes, sir.  I mean, I understand.

1  And we're obviously trying to comply as well as we can with
2  the Court's order and in good faith.
3          THE COURT:  On those lines -- and I forgot to put
4  it on my list here.  I've -- I know I gave you a timetable --
5  because things are out of whack for little bit.  But have you
6  been able to distribute the order I gave you on the extra
7  judicial statements?
8          MR. MCGUIRE:  Your Honor, as a matter of fact it
9  was sent to every Justice Department employee today.
10          THE COURT:  And how are we doing on Homeland
11 Security?
12          MR. MCGUIRE:  I have provided the copy of the
13 order to DHS.
14          THE COURT:  Okay.  To their general counsel or
15 what?
16          MR. MCGUIRE:  I believe so, Your Honor.  People
17 within that office.  I don't know that I know exactly who
18 their general counsel is, but within that office.  And I sort
19 of said I think the Court's order is very clear here.
20          THE COURT:  Okay.  Are they going to tell you
21 whether they complied with it or not?
22          MR. MCGUIRE:  I forecast to them that I
23 anticipated the Court would want to have some sense of
24 compliance.
25          THE COURT:  You're very smart.  I do.

```
 1              MR. MCGUIRE:  Well, and I don't have anything
 2    today, Your Honor.
 3              THE COURT:  Okay.
 4              MR. MCGUIRE:  I can -- now that we've had this
 5    conference I will say my forecast was accurate and the Court
 6    is going to want to know how this was handled.  So -- and
 7    I'll report back when I hear from DHS.
 8              THE COURT:  And --
 9              MR. MCGUIRE:  Department of Justice has complied,
10    Your Honor.
11              THE COURT:  And because all lawyers like -- or at
12    least seem to respond better with deadlines -- can you let me
13    know something by next week?
14              MR. MCGUIRE:  Yes, sir.
15              THE COURT:  And you want to pick a day next week?
16              MR. MCGUIRE:  How about next Wednesday?
17              THE COURT:  Wednesday, November the 5th.
18              MR. MCGUIRE:  Yes, sir.
19              THE COURT:  So be it.
20              All right.  What else?
21              MR. DEAN:  Your Honor, I have one more matter.
22              THE COURT:  Okay.
23              MR. DEAN:  And I'm not asking for any relief.  I
24    just want to let the Court know where the defense is on this.
25    There are three subpoenas to the Deputy Attorney General, to
```

1  people in his office, that are obviously subject to a motion

2  to quash.  On October 20th I sent an email to Mr. McGuire

3  with those subpoenas.  From the defense's perspective, the

4  fact that those subpoenas have been delivered to the

5  government, the government has filed a motion to quash, and

6  the number three official in the Department of Justice is now

7  involved in that, leads us to believe that service has been

8  perfected; they have notice of those.  I think the government

9  may disagree.  We may be coming back to the Court on that

10  issue at some point.

11           MR. MCGUIRE:  I don't know that I disagree, Your

12  Honor, so much as I told Mr. Dean I personally was not in a

13  position to accept service on behalf of anybody but myself.

14  And I did accept service for myself and acknowledged that I

15  would appear.  So that -- it wasn't that I sort of refused.

16           THE COURT:  Well, you filed a motion to quash all

17  three.  Can -- I'll ask -- can the Court assume they've been

18  properly served?

19           MR. MCGUIRE:  I think if the Court makes that

20  finding for -- because we filed a motion to quash, I think

21  that's reasonable.

22           THE COURT:  Does the government object to that

23  finding?

24           MR. MCGUIRE:  Not right now, Your Honor.  If I

25  change my mind or if I get contrary instruction I will let

1   the Court know.

2           THE COURT:  All right.  Well, we'll add that to

3   the things you can tell me on November 5th.

4           MR. MCGUIRE:  Yes, sir.  So the Court wants me to

5   file a status report on the 5th?

6           THE COURT:  Yeah.

7           MR. MCGUIRE:  I can do that.

8           THE COURT:  Okay.  So the Court does not actually

9   have -- I was surprised.  I thought somebody would give me a

10  copy of the subpoenas.  Because I want to know what they're

11  saying.

12          MR. DEAN:  We can submit a copy to Ms. Seay today

13  if that would be helpful, Your Honor.

14          THE COURT:  Why don't you make that a joint

15  submission.  Do you want to do it under seal?

16          MR. MCGUIRE:  That's fine, Your Honor.  They're

17  not particularly exciting.  I mean, they are a standard

18  subpoena for --

19          THE COURT:  So it wasn't subpoena duces tecum?

20          MR. MCGUIRE:  No, sir.  It was just for personal

21  appearance.

22          THE COURT:  Okay.  Does it -- I'm not as familiar

23  with the organizational structure of the Department.  Does it

24  state what their titles are and all that?

25          MR. MCGUIRE:  I believe so.

1          MR. DEAN:  It does, Your Honor.

2          THE COURT:  Okay.  It might be helpful for me just

3    to know that as we look --

4          MR. DEAN:  Is an email submission with Mr. McGuire

5    copied okay for that?

6          THE COURT:  Well, we need it on the docket.

7          MR. DEAN:  Need it on the docket.  Okay.

8          THE COURT:  Yeah.

9          MR. MCGUIRE:  Okay.

10          THE COURT:  And then if there is any objection to

11    the service the government will let us know on the 5th.

12          MR. MCGUIRE:  Yes, sir.

13          THE COURT:  And I'll just go ahead and add, absent

14    objections, the Court is going to consider service was

15    accomplished properly.

16          MR. MCGUIRE:  Yes, sir.

17          THE COURT:  All right.  I kind of alluded to it.

18    I'll just go ahead and ask it straightforward.  This case is

19    all I can handle with my other cases.  Is there any chance

20    that the government may decide to do other things with the

21    defendant that negate this trial?

22          MR. MCGUIRE:  Your Honor, I am not the decider on

23    any of those things.  So I don't know that I have a good

24    window into what's going to happen next.  Obviously there's

25    contested litigation in Maryland.  I don't have a lot of

contact or window into that, other than I communicated with
the lawyer to try to get Mr. Abrego transported, which we
were -- would have been able to do.  Other than that, Your
Honor, I don't really know. . .

THE COURT:  Can I take from your answer it's not
out of the -- it's not out of the universe of things that
could happen?

MR. MCGUIRE:  I mean, I think the government has
said in that case, based on what I have read if news reports,
that if they had the opportunity to deport the defendant they
would do that without kind of -- they would do that --

THE COURT:  They're waiting on Judge Xinis to say
whether they can do it.

MR. MCGUIRE:  Yes, sir.  I believe that's -- I
think they've taken that position in her court.

THE COURT:  Okay.

MR. MCGUIRE:  Yes, sir.

THE COURT:  All right.  Anything else?

MR. DEAN:  No thank you, Your Honor.

THE COURT:  All right.  We'll try to get an order
entered with all these deadlines, and appreciate you all
coming on short notice.

Thanks.

(Court adjourned.)

1  REPORTER'S CERTIFICATE

2

3          I, Lise S. Matthews, Official Court Reporter for

4  the United States District Court for the Middle District of

5  Tennessee, with offices at Nashville, do hereby certify:

6          That I reported on the Stenograph machine the

7  proceedings held in open court on October 31, 2025, in the

8  matter of UNITED STATES OF AMERICA v. KILMAR ARMANDO ABREGO

9  GARCIA, Case No. 3:245-cr-00115-1; that said proceedings in

10 connection with the hearing were reduced to typewritten form

11 by me; and that the foregoing transcript (pages 1 through 26)

12 is a true and accurate record of said proceedings.

13          This the 1st day of November, 2025.

14

15                              /s/ Lise S. Matthews
                                LISE S. MATTHEWS, RMR, CRR, CRC
16                              Official Court Reporter

17

18

19

20

21

22

23

24

25